**Cite as: Opinion No. 97-013  (June 4, 1997)**
**(unpublished)**

**ALCOHOLIC BEVERAGES ) MONTGOMERY COUNTY ) OPERATION OF
DISPENSARIES ) AUTHORITY OF COUNTY EXECUTIVE**

June 4, 1997

*The Honorable Douglas M. Duncan*
*Montgomery County Executive*

You have requested our opinion on the application of certain provisions of Article 2B of the Maryland Code to the sale and distribution of alcoholic beverages in Montgomery County. Specifically, you ask (i) whether Montgomery County has authority to "tur[n] over the control of sales, distribution and possession of alcoholic beverages to people who are not licensed under Article 2B"; and (ii) whether the Montgomery County Executive has exclusive policy making authority over the operation of the Montgomery County Department of Liquor Control ("DLC").

Our opinion is as follows:

1.      We agree with the conclusion previously reached by County Attorney Charles W. Thompson, Jr., on this issue: Montgomery County does not presently have authority to allow an unlicensed contractor to control the sales, distribution, and possession of alcoholic beverages in Montgomery County.[1]

2.      Under State law, the Montgomery County Executive has exclusive policy making authority over the operation of the DLC.

**I**

**History of Liquor Control in Montgomery County**

In 1933, following the demise of Prohibition, the General Assembly enacted Article 2B. Chapter 2 of the Laws of Maryland 1933 (Special Session).  In §48A of the 1933 enactment, the General Assembly created a Liquor Control Board for Montgomery County.  The Board was given monopoly control over the distribution of alcoholic beverages to licensees in Montgomery County.  In addition, the Board was "authorized and empowered to establish ... three county dispensaries or stores ...."  The Board was given "full power and authority ... to make any and all

---

[1]Chapter 701 (House Bill 933) of the Laws of Maryland 1997, effective October 1, 1997, contains provisions that address operation of County retail outlets by private contractors.  This opinion addresses current law, not the effect of Chapter 701.

contracts ... which the said Board may deem necessary or desirable to carry out the powers conferred upon said Board by this Act." The Board was also empowered to appoint such employees "as may be necessary to conduct the county liquor dispensaries or stores as above provided ...." Thus, the General Assembly envisioned that the Liquor Control Board would itself operate the three county dispensaries with its own employees. Because the power to "make any and all contracts" was limited to those "necessary or desirable to carry out the powers conferred upon [the] Board by this Act," the Board was not authorized by the 1933 Act to contract with an independent contractor to operate these liquor stores.

In Chapter 927 of the Laws of Maryland 1941, the General Assembly rewrote the provisions on the dispensary system in Montgomery County. The Liquor Control Board was granted "full power and authority ... to establish one or more dispensaries, stores or warehouses for the sale, distribution or storage of alcoholic beverages ...." Former §65(1). As under prior law, the Board was also empowered "to appoint ... employees as may be necessary to conduct the county dispensaries, stores, and warehouses ...." §65(3). In a rewording of the grant of authority to the Board, it was authorized simply "to enter into any and all contracts." §65(7). This language, however, was immediately followed by a grant of the power "to do all other things necessary or incidental to the proper execution of this Act." §65(8). We interpret the grant of contracting authority as one specific example of the Board's power to do those things "necessary or incidental to the proper execution of [the] Act"; the Board was not granted authority to enter contracts outside the statutory scheme. The statute continued to contemplate that the county's retail outlets would be operated by the Board through its employees.

In Chapter 501 of the Laws of Maryland 1947, the General Assembly enacted a comprehensive revision of Article 2B. Included was a consolidation of the provisions about the various county liquor control boards, in order to eliminate duplicate provisions. Under former §146(e), the Montgomery County Liquor Control Board, in common with the liquor control boards in the other counties with a dispensary system, was empowered "[t]o make any and all contracts ... necessary or desirable to carry out the powers conferred upon [it] by this article." The "conferred" powers included the power to "establish and maintain" county dispensaries. §144(a). The Liquor Control Board was again empowered "to appoint a general manager of said dispensaries ... and such additional clerks and employees as may be necessary to carry out the purposes of this subtitle ...." §146(k)(3) and (4). Once again, in our view, the legislative objective was that the Board "maintain" the dispensaries with its employees.

In Chapter 633 of the Laws of Maryland 1951, the General Assembly established the Montgomery County Department of Liquor Control, vesting it with the powers of a liquor control board. Former §139(a). The chief administrative officer of the DLC was the director, who was to be "appointed and removed by the county manager with the approval of the county council." §139(b) and (c). County liquor dispensaries were authorized to be established in locations determined by the director with the approval of the County Council. The director was also authorized, with the approval of the County Council, to acquire property in order to "*operate* dispensaries, stores or warehouses ...." §143(k)(1). The DLC, like liquor control boards elsewhere, continued to have the power to appoint the employees "necessary to conduct" the

dispensaries.  Former §143(a).[2]

In Chapter 956 of the Laws of Maryland 1978, the General Assembly augmented the authority of the Montgomery County Executive to control the operations of the DLC. First, the 1978 legislation provided that the Director of the DLC "serves at the pleasure of the County Executive."  Former §159(c)(7).  In addition, the DLC's powers "are subject to the approval of the County Executive ...."  §163(k)(1).  The bill's purpose, according to its title, was to provide "that the Director of the Department of Liquor Control of Montgomery County serve at the pleasure of the County Executive and [to] subjec[t] his authority to the approval of the County Executive."

These provisions, though recodified, remain unchanged.  Under §15-203(a)(1), the DLC, like other liquor control boards, may establish and maintain stores to be known as 'county liquor dispensaries' ...."  It is empowered to "appoint such employees as may be necessary to conduct such county liquor dispensary or branch dispensaries ...."  §15-205(a)(1)(i).  It also may "make any and all contracts ... which [it] may deem necessary or desirable to carry out the powers conferred upon [it] by this article."  §15-205(e)(1).  The DLC director may also acquire property "deemed necessary by the director to *operate* dispensaries, stores or warehouses."  (Emphasis added.)  This power is subject to the approval of the County Executive.  Finally, the DLC director may exercise the powers granted in §15-205 "subject to the approval of the County Executive ...." §15-205(k)(1).

## II

### Requirement for County Operation

In our opinion, the statutory scheme described in Part I above envisions that the DLC will operate the county dispensaries through its employees.  That was the clear import of the legislation that created the DLC's predecessor in 1933, and each revision of the statute has retained the language reflecting that objective.  The DLC is to "establish and maintain" dispensaries, appoint the employees necessary "to conduct" them, and acquire the property needed to "operate" them.  Because the DLC's power to make contracts, now found in §15-205(e)(1), is limited to the carrying out of "the powers conferred upon [the DLC] by this article," that grant of authority does not permit county dispensaries to be "maintained," "conducted," or "operated" by a contractor, rather than by the DLC and its employees.

Construing the statute to require direct operation by the DLC is consistent with other statutory provisions.  The DLC is a "licensee."  §1-102(a)(15).  It has "an absolute monopoly of the sale and distribution of ... alcoholic beverages ..." in Montgomery County.  §15-204(a).  With exceptions not pertinent here, only licensees may possess or sell alcoholic beverages.  §1-201(a).  Moreover, in Montgomery County, "[i]t is unlawful for any person to keep ... any alcoholic

---

[2]The 1951 enactment directed that DLC employees "be appointed and hold their positions subject to [County Personnel Board] Regulations."

beverage on any premises open to the public other than as specifically permitted or provided in this article." §8-216(c). Article 2B presently contains no specific permission for the operation of county dispensaries by anyone other than the DLC and its employees.[3]

Nor does Montgomery County have authority to contract out dispensary operation under the Express Powers Act. The Act expressly denies to charter home rule counties the power to legislate licensing or regulatory requirements concerning the sale of alcoholic beverages. Article 25A, §5(S). More generally, the Act does not authorize Montgomery County or other charter home rule counties to legislate in a field — regulation of alcoholic beverages — that has been preempted by the State. *See, e.g., Ad + Soil, Inc., v. County Commissioners*, 307, 324, Md. 307, 513 A.2d 893 (1986); *Mongtomery County v. Board of Supervisors of Elections,* 53 Md. App. 23, 451 A.2d 1279 (1982).


### III

### County Executive Authority

As discussed in Part I above, the powers of the director of the DLC "are subject to the approval of the County Executive." §15-205(k)(1). This provision, like the rest of Article 2B, reflects State regulation in an area that is preempted by the State and that is not subject to control by county charter or ordinance. *See Montgomery County v. Board of Supervisors of Elections,* 53 Md. App. 23. Therefore, whatever might be the ordinary allocation of decision making authority between the County Council and the County Executive under the Montgomery County Charter, in this instance the exclusive authority to approve the exercise of the DLC's powers rests with the County Executive.[4]

<div style="margin-left: 40%;">

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions and Advice*

</div>

---

[3]*But see* note 1 above. We also recognize that Article 2B does use the phrase "agents, employees and servants of a licensee" in its revocation and suspension section. §10-401(a)(3)(iv). The term "agents" would be redundant if it did not imply that a licensee might avail itself of the assistance of a contractor who would be an agent, but not an employee. Nevertheless, we do not find this implication sufficient to justify an exception to the statutory requirement that liquor dispensaries in Montgomery County be operated by the DLC through its employees.

[4]This provision does not preclude county legislation that would require reporting by the County Executive or impose a consultation requirement, so long as the ultimate "approval" authority is retained by the County Executive.